Grafton
No. 83-297

### THE STATE OF NEW HAMPSHIRE

v.

### BENJAMIN H. ROBIDOUX

July 3, 1984

*Gregory H. Smith,* attorney general (*T. David Plourde,* assistant attorney general, on the brief and orally), for the State.

*Joanne S. Green,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

DOUGLAS, J.   The defendant appeals his convictions for burglary, RSA 635:1, and criminal mischief, RSA 634:2. He argues that his convictions both for burglary and for criminal mischief contravened the prohibition found in RSA 635:1, IV. He also argues that his right to a fair trial was violated when he appeared at the jury selection in identifiable prison clothing. For the reasons which follow, we affirm.

The defendant, Benjamin Robidoux, was indicted for burglary with intent to commit theft, a class A felony, and for criminal mischief, a class B felony. Before trial, the defendant moved to dismiss the indictment for criminal mischief, arguing that it was barred by RSA 635:1, IV, which prevents an accused from being convicted both for burglary and for the underlying crime to be committed after the illegal entry. The Superior Court (*Johnson,* J.)

denied the motion, subject to exception. At the close of the State's case, the defendant again moved to dismiss the indictment for criminal mischief on the same ground. The court also denied this motion, noting the defendant's exception. The jury found the defendant guilty of burglary, a class B felony, and criminal mischief, a class B felony. He was sentenced to two consecutive three-and-one half to seven year prison terms.

The evidence at trial established the following facts. On April 25, 1983, State Trooper Kevin Hamilton approached the home of Mitchell Rudnick in Thornton, New Hampshire. His attention was drawn to the rapidly spinning power meter on the side of the house. Upon inspection, he discovered gouge marks on the frame of the rear sliding glass door and a metal bar inside the house. Before entering the house, Hamilton observed that it "was ransacked and numerous things were disturbed, broken and otherwise wrecked inside the home." An examination of the remainder of the house revealed that "everything in the house was broken and in shambles, ransacked [or] destroyed."

Every electric light switch had been turned to the "on" position. All the electrical heating units had been turned to the highest degree and the control knobs broken off. The bedrooms and bathrooms had been extensively damaged. Food had been strewn throughout the house. Blood splatterings were found in several rooms and on shattered pieces of glass and mirrors. An insurance adjuster testified at trial that the damage to the contents of the house alone would amount to at least $12,500.

Mitchell Rudnick met with the State Police in late April and inventoried the contents of his home. He determined that a pair of fiber-soled hiking boots and a "CB" brand jacket were missing. He informed the police that a knife, a sweater, a pair of sneakers and a cap, which were found in his house, did not belong to any member of his family.

Fingerprints found in the Rudnick house were determined to match a print taken from the defendant. Certain testimony at trial linked the defendant to the items found in and taken from the Rudnick house. On the basis of this and other evidence, the defendant was convicted of burglary and criminal mischief. He appeals both convictions.

The defendant first argues that his conviction for criminal mischief must be reversed because it violates RSA 635:1, IV.

A person is guilty of burglary "if he enters a building . . . with purpose to commit a crime therein." RSA 635:1, I. Subsection IV of the burglary statute states, however, that "[a] person may not be convicted both for burglary and for the offense which it was his

purpose to commit after the burglarious entry . . . unless the additional offense constitutes a class A felony." RSA 635:1, IV.

In the instant case, the defendant was convicted both for burglary with intent to commit theft, and for a class B felony, criminal mischief. We must determine whether his conviction for criminal mischief violated RSA 635:1, IV. More specifically, we must decide whether RSA 635:1, IV bars a conviction both for burglary and for each offense, other than a class A felony, the accused intended to commit at the time of the burglarious entry.

The defendant argues that the meaning of RSA 635:1, IV is clear: Unless an offense intended at the time of the burglarious entry constitutes a class A felony, the accused may not be convicted both for burglary and for that offense. Consequently, the defendant contends that in order for the State to convict an accused both for burglary and for any offense that does not constitute a class A felony, it must prove that the intent to commit that offense was not present at the time of the burglarious entry.

On the other hand, the State argues that RSA 635:1, IV does not bar the defendant's conviction both for burglary and for an offense which it was his purpose to commit at the time of the entry when that offense is not the "target" offense specified in the burglary indictment. In other words, the State reads subsection IV as merely precluding a conviction for both burglary and the intended offense specified in the burglary indictment, in this case theft.

We have not had occasion to construe RSA 635:1, IV in the past. We note, however, that the Commission for the Revision of the Criminal Laws, established by RSA chapter 451 (Supp. 1967), stated that the burglary statute was derived from the Model Penal Code section 221.1. *See* REPORT OF COMMISSION TO RECOMMEND CODIFICATION OF CRIMINAL LAWS, 56 (1969). Accordingly, the commentary to section 221.1 of the Model Penal Code is helpful to a resolution of the issue presented. *See Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979).

The commentary to section 221.1 states that section 221.1(3), the subsection from which RSA 635:1, IV was derived, "precludes cumulation of penalties for burglary and its object offense *in all circumstances* except where the object offense is itself a felony of the . . . first degree." MODEL PENAL CODE AND COMMENTARIES § 221.1, at 83 (1980) (emphasis added). The drafters did not designate the "object offense" as necessarily being the offense specified in the burglary indictment. Thus, it would appear, at first glance, that the only time a defendant may be convicted of burglary and any intended offense is when that offense constitutes a class A felony. A more careful

review of the purpose underlying the inclusion of subsection (3), however, leads to a different conclusion.

██ The drafters of the Model Penal Code viewed burglary as an attempt to commit some other crime, that is, a form of preparation to commit an offense. *Id.* at 62–63. Subsection (3) of the burglary provision was included to delineate the circumstances in which burglary would be treated in the same manner as other inchoate offenses. In the words of the drafters:

> "Section 1.07(1)(b) of the Model Code is a general preclusion of conviction for both an offense and a form of preparation to commit that offense. Since burglary is defined as unlawful entry with purpose to commit a crime, it could be argued, in the absence of Subsection (3), that no cumulation of sentences for burglary and its object offense would be permitted. One major objective of Subsection (3) is to clarify this point and thus make it clear that cumulation is permitted in the specified cases."

*Id.* at 83 n.80. Only by examining the commentary to section 1.07(1)(b), entitled Method of Prosecutor When Conduct Constitutes More Than One Offense, MODEL PENAL CODE § 1.07 (Proposed Official Draft 1962), are we able to determine the circumstances in which the drafters intended the limitation on multiple convictions to apply.

██ The drafters of the Model Penal Code, using the crime of conspiracy to articulate the limitations of the provision precluding multiple convictions, section 1.07(1)(b) (formerly § 1.08(1)(b) in the tentative draft), clearly state that the provision is confined solely to the situation in which only one offense is the object of the preparation. MODEL PENAL CODE § 1.08(1)(b), at 32 (Tent. Draft No. 5, 1956).

The drafters took the view that since conspiracy, which is often merely preparation to commit an offense, is punishable to the same degree as the completed offense, the unlawful conduct is adequately dealt with upon the conviction for conspiracy. When there is more than one objective, however, the criminal conduct involves additional dangers that would not be addressed with the one conviction. "Therefore, there may be conviction of both a conspiracy and a completed offense committed pursuant to that conspiracy if the prosecution shows that the objective of the conspiracy was the commission of additional offenses." *Id.*

That this is also the position of the drafters in regard to other forms of preparation to commit a crime is evident in the closing paragraph of the commentary to the provision:

"The position taken with regard to conspiracy is proposed also in the case of any other conduct which is made criminal only because it is a form of preparation to commit another crime. Of course if the preparatory conduct has other or further criminal objectives, here as in conspiracy the limitation is inapplicable."

*Id.* at 33.

■■ Given the rationale of the drafters of the Model Penal Code, we conclude that RSA 635:1, IV, bars a conviction for an intended offense when that offense is the *sole* objective of the burglary. When there is more than one objective, however, RSA 635:1, IV, will operate to preclude a conviction for the offense specified in the burglary indictment but will not bar a conviction for additional offenses intended at the time of the burglarious entry. Therefore, so far as the State proved that the defendant in the instant case intended to commit both theft and criminal mischief at the time of his burglarious entry, his conviction for criminal mischief did not violate RSA 635:1, IV. Of course, had the State attempted to indict the defendant for the offense of theft, it would have been precluded from doing so by RSA 635:1, IV.

■ The defendant next argues that the trial court erred in refusing to grant a mistrial when the defendant appeared before the jury in identifiable prison clothing. Although the State cannot "compel an accused to stand trial before a jury while dressed in identifiable prison clothing . . . ," *Estelle v. Williams*, 425 U.S. 501, 512 (1976), "the particular evil proscribed is *compelling a defendant, against his will,* to be tried in jail attire." *Id.* at 507 (emphasis added).

The transcript reveals that the instant defendant appeared at the jury selection in a fishnet tee shirt. The trial judge, characterizing the shirt as unfit and prejudicial, ordered that the defendant be provided with a suitable shirt. The defendant was given a short-sleeved shirt to which he objected because it did not cover a tattoo on his forearm. He was then given a jacket to wear over the shirt that would have covered the tattoo. The jacket was objected to by the defendant because it was ill-fitting. In regard to the jacket, the trial judge stated that while not "a perfect fit . . . it was not an outrageous fit either."

A long-sleeved shirt was then given to the defendant that had the word "jail" printed on the back in one inch letters. Both a jacket and

a sweatshirt, that would have covered the word "jail," were offered to the defendant, but he refused to wear either. The trial judge then offered to "make any corrective statement [the defendant] want[ed]," noting that the defendant was "insisting on [the shirt] and he cannot deprive himself of a trial by his own decision on his wardrobe. We have offered him adequate wardrobe, he has refused an adequate wardrobe."

On the record before us, we cannot say that the defendant was compelled by the State, against his will, to be tried in identifiable prison clothing. On the contrary, it appears that the defendant not only chose to wear the shirt, but insisted on it, refusing any other suitable clothing. He also refused offers to cover the word "jail" and to correct any prejudice resulting from his choice. Thus, we conclude that the trial judge did not err in refusing to grant a mistrial, and we affirm both convictions.

*Affirmed.*

All concurred.