THE STATE OF NEW HAMPSHIRE

v.

CLARENCE ELBERT

July 9, 1986

*Stephen E. Merrill*, attorney general (*Tina Schneider*, attorney, on the brief and orally), for the State.

*Joanne S. Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. This is the third appeal in the course of the prosecution and sentencing of the defendant for attempted murder, RSA 630:1-a and 629:1 (1974 and Supp. 1983), and felonious use of a firearm, RSA 650-A:1 (Supp. 1983). *See State v. Elbert*, 121 N.H. 43, 424 A.2d 1147 (1981) (jury selection challenge); *State v. Elbert*, 125 N.H. 1, 480 A.2d 854 (1984) (appeal from conviction). In the second appeal, we affirmed the defendant's conviction on each charge, but found error in the imposition of a sentence with a minimum and maximum term on the charge of felonious use of a firearm. *Id.* at 16, 480 A.2d at 862–63. On remand for the imposition of a determinate sentence for felonious use, the defendant moved to vacate the felonious use conviction, arguing for the first time that conviction and sentencing both for felonious use and for attempted murder would subject him to double jeopardy in violation of part I, article 16 of the State Constitution. The Superior Court (*C. Flynn*, J.) denied the motion, finding that it had not been timely raised, and imposed a ten-year sentence to be served consecutively to the sentence for attempted murder. We affirm, but on another ground.

The trial court ruled that the defendant's motion was untimely, because he failed to raise the double jeopardy claim prior to the second appeal. The State, however, has expressly declined to rely upon this issue. For that reason, and because of the general need to resolve the substantive issue, we will express no opinion on timeliness and will proceed to consider the applicability of article 16.

The defendant contends that imposition of a sentence for felonious use of a firearm, in addition to a sentence for attempted murder, would violate the guarantee against double jeopardy contained in part I, article 16 of the State Constitution, subjecting him to multiple punishments for the same offense. He argues that the offenses actually charged under the two statutes are the same, because the same evidence was necessary to prove the commission of each crime, with no additional facts needed to prove either; *i.e.*, once the State proved attempted murder through the use of a gun, it also proved felonious use of a firearm. The defendant summarizes his position with a quotation from *Heald v. Perrin*, 123 N.H. 468, 473, 464 A.2d 275, 278 (1983) that "'as the offenses were charged and proven in this case, not a single difference in evidence was required.'" The defendant would apply *Heald* and the New Hampshire double jeopardy test too broadly, however.

The habeas petitioner in *Heald* had been sentenced consecutively under two separate statutes: RSA 636:1, III, which provides that robbery while armed with a deadly weapon is a class A felony, whereas unarmed robbery is merely class B; and RSA 651:2, II-b (Supp. 1983), which mandates the imposition of a minimum, consecutive term of imprisonment upon any defendant convicted of committing a felony while armed with a firearm, in violation of RSA 650-A:1 (Supp. 1983), *i.e.*, for so-called "felonious use." The petitioner claimed, *inter alia*, that cumulative imposition of sentences for armed robbery and for felonious use would violate his privilege to be free of multiple punishments for the same offense, as guaranteed by the State double jeopardy clause. N.H. CONST. pt. I, art. 16.

Two significant features of the statutes applied in *Heald* focussed and limited the issues in that case. The first was that each statute provided an enhanced penalty for the commission of what would otherwise have been a less serious crime. RSA 636:1, III elevated the offense to a class A felony, and RSA 651:2, II-b (Supp. 1983) prescribed a further cumulative penalty. Given this feature, the petitioner in effect raised the issue whether article 16 should limit the number of cumulative penalty enhancements. The court implicitly held that article 16 could limit multiple penalty enhancements and devoted its attention to the problem raised by the second significant

feature of the statutory context. *Heald, supra* at 471, 464 A.2d at 276.

This second feature was the use in one enhancement statute of a specific term to describe the element enhancing the penalty, in contrast to the use in the other statute of a generic term, broad enough to encompass the specific term used in the first. RSA 651:2, II-b (Supp. 1983) provides for a mandatory penalty to be imposed upon anyone convicted of violating RSA 650-A:1 (Supp. 1983), by committing a felony when "armed with a pistol . . . or any other firearm." With respect to one such underlying felony, RSA 636:1, III(a) elevates robbery to a class A felony when the robber is "actually armed with a deadly weapon," defined as "any firearm, knife or other substance or thing . . . capable of producing death or serious bodily injury," RSA 625:11, V. The general term "deadly weapon" is thus broad enough to include a "firearm" and is explicitly so defined. *Id.*

The State submitted in *Heald* that the difference between the specific and the general was significant for purposes of article 16. The State need not prove possession of a firearm in order to prove armed robbery; it therefore argued that the enhancement elements were not the same. The State thus raised a fundamental issue of double jeopardy analysis: whether elements of two statutes are different if one statute states a specific example that would fall within a general category employed by the other. Depending on the resolution of that issue, double jeopardy protection may be significantly broader or narrower. *See Illinois v. Vitale*, 447 U.S. 410 (1980).

If, for example, the court in *Heald* had held that article 16 would always recognize a distinction between those specific and general elements, the petitioner would have lost. The terms of one statute did not require proof of a firearm; the terms of the other did not require proof of a robbery. On that analysis, each statute would have been seen to require proof of an element that the other did not, the offenses would not have been the same under article 16, and there would have been no bar to multiple enhanced penalties. *See Heald*, 123 N.H. at 472, 464 A.2d at 277; *see also State v. Gosselin*, 117 N.H. 115, 117–18, 370 A.2d 264, 267 (1977) (under State "same-evidence" test for double jeopardy, two offenses not the same when proof of different elements necessary for conviction under each); *State v. Smith*, 98 N.H. 149, 150, 95 A.2d 789, 791 (1953) (under State "same-in-law-and-in-fact" test for double jeopardy, two offenses not the same when each requires proof of an element that the other does not).

The court's actual answer in *Heald* was that elements of two statutes are not necessarily different for purposes of article 16 simply

because one statute states the element in general terms and the other does so more specifically. *Heald,* 123 N.H. at 473, 464 A.2d at 278. The case held, in the context of multiple penalty enhancement statutes, that in order to determine whether a specific and a general element are the same, a court must look to the evidentiary facts actually alleged to prove each element. If the evidentiary facts are the same, then the elements are the same. *Id.*

Thus, the petitioner prevailed in *Heald* because "as the offenses were charged and proven . . . not a single difference in evidence was required." *Heald, supra* at 473, 464 A.2d at 278. *Heald* thus solved a problem in construing the scope of State double jeopardy protection, but it did not announce a new, general double jeopardy test. And it is clear in any case that *Heald* was not intended to answer the question now before us, whether article 16 permits the application of a single penalty enhancement provision through the mechanism of a separate indictment.

The basic argument for a negative answer is that to allow conviction for a basic offense plus a separate conviction under a penalty enhancement statute is similar to allowing conviction both for a lesser-included and a superior offense. *See Missouri v. Hunter,* 459 U.S. 359, 369 (1983) (Marshall, J., dissenting, citing *Brown v. Ohio,* 432 U.S. 161 (1977), *inter alia*). The answer, however, rests on the recognition that accepting this argument would prefer form over substance in limiting legislative power to determine appropriate penalties, without any practical justification for the formalism.

There is no question that the legislature can constitutionally define separate, and more severely punishable, classes of an offense by reference to enhancement elements. As the court recognized in *Heald,* the legislature is perfectly free to provide that robbery committed by an armed defendant is more serious than unarmed robbery. *Heald,* 123 N.H. at 474, 464 A.2d at 279. Thus the legislature could constitutionally mandate the result intended here simply by creating a separate class of attempted murder when perpetrated by an armed defendant. It therefore would be formalistic to read article 16 as forbidding the same result when effected by simultaneously prosecuted indictments, separately charging a basic offense and the elements justifying an enhanced penalty.

A charge of formalism is admittedly not a dispositive objection in every case, because formalism can sometimes serve valuable objectives. In *Heald* itself, for example, the court conceded that the legislature could constitutionally provide the equivalent of a double penalty enhancement by creating a third and most heavily penalized category of robbery committed by a defendant with a firearm. *Heald, supra* at 475, 464 A.2d at 279. Although this was a concession

to formalism, it served the end of ensuring that the unusual result of double penalty enhancement would not occur without a legislative choice expressing exactly that intent.

A comparably formalistic result in the present circumstances would have no such justification, however. Provision for a single penalty enhancement presents neither novelty nor the vexatiousness that may be thought to arise from a multiplicity of enhancement provisions. Nothing would be gained by employing the general rules of construction upon which double jeopardy analysis rests so as to require the legislature to enact a separate enhanced penalty provision for every felony. *See Missouri v. Hunter, supra* at 368–69.

*Heald* anticipated this analysis. On the one hand, the court observed that where "use of a gun is used to trigger . . . enhancement provisions, it will generally follow that the felonious use of a firearm cannot *also* be charged . . . ." *Heald,* 123 N.H. at 474, 464 A.2d at 278 (emphasis in original). The court also stated, however, that "felonies which themselves are not enhanced because of the defendant's use of a gun are . . . not likely to run afoul of the double jeopardy provision [when prosecuted in tandem with a charge under RSA 650-A:1 (Supp. 1983)]." *Heald, supra* at 474, 464 A.2d at 279.

██ We so hold today. Article 16 does not forbid the imposition of a single enhanced penalty for an underlying offense, even though the underlying offense and the allegations justifying the penalty enhancement are contained in separate indictments containing identical allegations.

*Affirmed.*

JOHNSON, J., did not sit.