Coos
No. 87-507

THE STATE OF NEW HAMPSHIRE

v.

MARVIN H. AMELL

December 29, 1988

*Stephen E. Merrill,* attorney general (*Michael D. Ramsdell,* assistant attorney general, on the brief), by brief for the State.

*James E. Duggan,* appellate defender, of Concord, by brief for the defendant.

### MEMORANDUM OPINION

THAYER, J. The defendant was convicted following a jury trial in Superior Court (*McHugh,* J.) for second degree assault on his infant son in violation of RSA 631:2, I. The defendant appeals on the ground that the evidence was insufficient to prove that he recklessly caused a fracture of his son's leg. We affirm.

The following facts are contained in the record. On April 3, 1987, Jacqueline Couture gave birth to a son, Stephan Amell. At the time, Couture was living with the baby's father, the defendant. Two weeks after the baby was born, Couture began to work a night shift at a restaurant, leaving the defendant, who was unemployed, to babysit the infant while she worked.

On April 25, 1987, Couture returned home from work at approximately 2:45 a.m. to find the baby crying. The defendant told Couture to go to bed, and that he would take care of the crying baby. When Couture woke up at 6:00 a.m. the baby was crying harder. Couture coaxed the baby to sleep, and then returned to bed herself. When she arose again sometime between 9:30 a.m. and 10:00 a.m., the defendant told her that he had taken the baby to the hospital for a flu shot for an intestinal virus, and that this virus would cause bruising if the baby were touched. Couture then noticed that the baby's leg was swollen to twice its normal size. The defendant later used the same flu shot explanation when other family members noticed the bruises on the baby's leg.

On May 15, Couture was giving the baby a bath when she noticed a limpness in his right leg. She took him to the hospital, where he was examined by Dr. Harry Stearns, an orthopedic surgeon. X-rays revealed a healed fracture of the baby's right femur. Dr. Stearns testified at trial that the fracture had occurred approximately two to three weeks earlier. Dr. Stearns also testified that this type of fracture, a transverse fracture, would result from either a blow to the leg, or something bending and cracking the leg in half, and that a transverse fracture of the femur in a very young infant is "almost always [an] inflicted [injury]."

Dr. Stearns ruled out the possibility of a fall as a cause of injury, because the baby was too young even to crawl. In his opinion, it was also unlikely that a heavy object had fallen on the baby since, if the baby had been lying on a soft surface, it would have taken the force of a 20 to 30 pound sledge hammer, dropped from the distance of the crib to the floor, to cause such a break. Dr. Stearns further testified that it was even less likely that the injury resulted from the baby being dropped onto a heavy object because the baby exhibited no signs of additional bruises. Dr. Stearns also stated that "it's not your typical case of simply an accidental happening" based on the type of fracture and the fact that the baby had not been seen by a physician until the fracture had healed, several weeks later. He testified that "[t]his child would have been screaming at the time of this injury and for a period of time after . . . to change a child you have to lift up the legs, spread the legs apart. This child would have been in tremendous discomfort from these activities. Even the gentlest handling of a three-week-old to five-week-old child with a fractured femur results in screaming and crying and obvious discomfort that would be obvious to anyone." Dr. Stearns assessed the situation as "highly suspicious of either direct violence

to the child by a family member or whoever was in custody or care of [the] child at the time . . . ."

The defendant argues on appeal that the circumstantial evidence failed to exclude the rational conclusion that he accidentally injured the baby, and that the evidence therefore was insufficient to show that he recklessly caused the fracture of the baby's leg. We do not find this argument compelling.

■■ In an appeal based on the sufficiency of the evidence, the defendant bears the burden of demonstrating that "'no rational trier of fact, viewing the evidence most favorably to the State, could have found guilt beyond a reasonable doubt.'" *State v. Guay*, 130 N.H. 413, 421–22, 543 A.2d 910, 915 (1988) (quoting *State v. Murray*, 129 N.H. 645, 650, 531 A.2d 323, 327 (1987)). The jury may "'infer guilt from circumstantial evidence that excludes all other rational conclusions.'" *Id.* at 422, 543 A.2d at 915.

■■ On the record before us, we hold that the jury could reasonably have found beyond a reasonable doubt that the defendant recklessly caused the fracture of the baby's leg, where the facts, viewed in a light most favorable to the State, exclude all other rational conclusions. The evidence indicated that the baby had been in the defendant's care at the approximate time he suffered the broken femur, and the expert's testimony stressed the likelihood that the injury was not accidental. Although Dr. Stearns could not completely dismiss the possibility that the injury happened accidentally, he stated that he was "absolutely certain" that if it had been an accidental injury, the child would have had reactions, such as screaming and crying, and would have appeared to have been physically injured, to the extent that the child's condition should have prompted an immediate visit to a physician. In addition, the jury could reasonably have inferred that the defendant's statements to Couture and to others regarding the alleged flu shot were meant as a cover-up of the cause of the swelling of the leg. The jury was free to "determine the weight and credence to be given the evidence at trial" and to reject any inferences urged by the defendant. *State v. Meaney*, 129 N.H. 448, 451, 529 A.2d 384, 386 (1987). Accordingly, we affirm the conviction.

*Affirmed.*

All concurred.