Hillsborough
No. 89-309

# The State Of New Hampshire

### v.

# Daniel Coleman

December 28, 1990

*John P. Arnold,* attorney general (*David S. Peck,* senior assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* chief appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Daniel Coleman, was convicted of second degree assault after jury trial in the Superior Court (*O'Neil,* J.) and was sentenced to from one to seven years of imprisonment. Coleman appeals his conviction, arguing that the trial court improperly found a witness to be qualified as an expert and erroneously admitted certain hearsay evidence. We reverse and remand.

The pertinent facts of this case are as follows. On the morning of June 5, 1988, Coleman and his ex-girlfriend, Susan Lefebvre, were arguing in an alley off of Amory Street in Manchester. She was on foot; he was in his car. Lefebvre was on her way to a friend's apartment, the entrance to which was located further down the alley, away from Amory Street. Coleman had backed his car into the alley in order to talk with her. After a few moments, Lefebvre walked away from Coleman and continued down the alley toward her friend's apartment. Coleman's car then accelerated, in reverse, and struck a dumpster; Lefebvre was behind the dumpster at the time. The dumpster hit Lefebvre, breaking her arm and injuring her back.

The defendant first argues that during a pre-trial conference the trial court improperly denied Coleman's motion to conduct a hearing outside the jury's presence to determine whether police officer Edward Szelog was qualified to testify as an expert. The defendant asserted that the trial judge improperly found the officer to be an expert based on his personal knowledge of the officer's qualifications. Szelog, an officer in the Manchester Police Department, specialized in accident reconstruction. He later testified at trial that he examined the marks left by the tires of Coleman's car, and concluded that Coleman had not braked before hitting the dumpster. This conclusion directly contradicted Coleman's testimony at trial, and was generally inconsistent with Coleman's defense of accident.

The trial judge was not obligated to conduct a hearing on Szelog's qualifications outside the presence of the jury, and thus committed no error when he denied the defendant's motion. *See* N.H. R. Ev. 104(a), (c). At the pre-trial conference on the motion to conduct a hearing outside the jury's presence, the following statement was made:

THE COURT: "I'd have to say myself . . . I've known Officer Szelog for 25 years and I'd have to say if there's anybody that's an expert over in that department, it's Eddy Szelog. And I've listened to him and qualified him dozens of times as being an expert. He's been doing traffic as far back as I can remember . . . ."

The trial judge then went on to say, "I don't know what you're going to ask him that would unqualify him." Finally, after further discussion, the trial court found the officer qualified to offer expert opinion evidence.

Coleman now argues that the trial judge erroneously found Szelog to be qualified as an expert. The judge erred, Coleman contends, because he found Szelog qualified before hearing any evidence of Szelog's qualifications, and instead based his decision on his personal knowledge of the officer's expertise. The State responds that the trial judge's qualification of Szelog as an expert should not be reversed, because (1) Coleman never objected to the officer's qualifications; (2) Coleman failed to adequately cross-examine Szelog concerning his qualifications; and (3) if the trial judge's decision was in error, it was harmless.

■ Rule 702 of the New Hampshire Rules of Evidence, "Testimony by Experts," states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." N.H. R. EV. 702. An established, widely-recognized corollary of this rule is that "[t]he party offering a witness as an expert has the burden of establishing the witness' qualifications." C. DOUGLAS, NEW HAMPSHIRE RULES OF EVIDENCE MANUAL 160 (1986); see also Birmingham Ry., Light & Power Co. v. Barrett, 179 Ala. 274, 290–91, 60 So. 262, 267 (1912); Giacobazzi v. Fetzer, 6 Mich. App. 308, 315, 149 N.W.2d 222, 225 (1967); International Security Life Ins. Co. v. Beauchamp, 464 S.W.2d 679, 681 (Tex. Civ. App. 1971); 31A AM. JUR. 2d Expert and Opinion Evidence § 60 (1989); 32 C.J.S. Evidence § 458 (1964).

Officer Szelog testified at trial. The State first inquired as to his experience and qualifications to offer expert opinion as to the tire marks left by the defendant's vehicle. The officer's testimony clearly indicated that he met the standard of an expert under New Hampshire law. See State v. Berry, 124 N.H. 203, 208, 470 A.2d 881, 884 (1983) (witness may testify as expert if evidence will aid jury in

search for truth). The defendant's cross-examination of the officer's qualifications was cursory.

We conclude that the trial court's decision to find the officer qualified as an expert, during the chambers conference, was improper since the State had the burden of offering evidence as to the expertise of the officer. The trial court may not rely upon its personal knowledge of the expertise of a witness, without any evidence being proffered by the proponent, when ruling that a witness may offer expert opinions. However, the failure of the defendant to object to the opinions of the officer, given after he was qualified, and the virtually unchallenged evidence at trial that the witness was qualified, render the error harmless. *See State v. Ruelke*, 116 N.H. 692, 694, 366 A.2d 497, 498 (1976); *see also State v. Nadeau*, 126 N.H. 120, 125, 489 A.2d 623, 626 (1985).

The next issue is whether the trial court erred in allowing into evidence the statement of an eyewitness through the testimony of an investigating officer. At trial, Coleman argued in defense that he struck the dumpster accidentally. The State, however, produced an eyewitness, Alan Gervais, who was prepared to testify that he thought Coleman acted deliberately. Coleman objected to Gervais's stating his opinion to the jury, and the trial court sustained the objection. Gervais, however, had told a police officer at the scene his opinion of Coleman's actions and, later in the trial, the court allowed the officer to repeat to the jury Gervais's opinion that Coleman's actions were deliberate.

On appeal, Coleman argues that the police officer's testimony as to what Gervais had reported to him was inadmissible hearsay. The State counters that Coleman failed to properly raise an objection to the testimony at trial. We disagree.

Gervais was called as a witness for the State. The following colloquy took place:

| | |
|---|---|
| "STATE: | You gave an oral statement to one of the officers? |
| MR. GERVAIS: | Yeah. |
| STATE: | Did that event in the alley appear to you to be accidental? |
| DEFENSE COUNSEL: | Objection, your Honor. |
| STATE: | I believe he's entitled to form that opinion, Judge, he was there. |
| DEFENSE COUNSEL: | Judge, he's not qualified— |

| STATE: | I think that's a question for the jury based on all the facts in the case. I mean, he may have an opinion, but it's certainly—I don't think it would be innate to the trier of fact, although he was there, but— |
| THE COURT: | Objection sustained." |

Hence, the eyewitness was prohibited by the trial court from giving his opinion as to whether the defendant acted accidentally, or "knowingly," as the State asserted in the indictment charging the defendant with first degree assault.

The State thereafter called an officer of the Manchester Police Department, Robert B. Harrington, who had investigated the event. The officer was questioned as follows:

| "STATE: | For how long did you speak with Mr. Gervais? |
| OFFICER HARRINGTON: | Very briefly; I'd say no more than three minutes. |
| STATE: | What did Mr. Gervais tell you? |
| OFFICER HARRINGTON: | He told me that he observed the entire incident. He had seen a fight between the two. He'd seen the female attempting to get away from the defendant, walking down the alley. He said he then saw the car back up— |
| DEFENSE COUNSEL: | Excuse me. I object. This is hearsay. |
| STATE: | Mr. Gervais did testify and was available for cross examination. He already testified. |
| THE COURT: | It's cumulative at best, but overruled. Go ahead. |
| OFFICER HARRINGTON: | Mr. Gervais told me that he observed a domestic squabble between the two and he ob- |

served the female going down the alley, and then he saw the car in high speed in reverse, going towards the victim. He told me the victim tried to hide behind the dumpster. And it was his opinion that the person operating the vehicle had deliberately driven into the dumpster."

The State was thus able to present to the jury, through hearsay, that which it had been prohibited from presenting through the declarant, Gervais; namely, the opinion that the defendant had acted "deliberately."

■ We have recently noted in *State v. Wisowaty*, 133 N.H. 604, 580 A.2d 1079 (1990), that a general objection is not sufficient to preserve an issue for appeal. N.H. R. Ev. 103(a). Here, however, defense counsel did more than simply say, "Objection," as in *Wisowaty*; counsel clearly stated that the objection was grounded on the fact that the officer was offering hearsay evidence. The trial court improperly ruled, because the officer was going to testify as to matters upon which Gervais had already given testimony, that the cumulative nature of the testimony permitted the officer to present what would otherwise clearly be inadmissible hearsay evidence. We know of no recognized hearsay exception for "cumulative" testimony, and the officer should not, therefore, have been allowed to proceed to detail what Gervais told him at the accident scene. *See generally* V, VI J. WIGMORE, EVIDENCE §§ 1420–1792 (Chadbourn rev. 1974, 1976) (discussing exceptions to hearsay rule); 4 J. WEINSTEIN AND M. BERGER, WEINSTEIN'S EVIDENCE ¶ 803[01] *et seq.* (1990) (discussing exceptions to hearsay rule).

■ Had the trial court properly ruled on the defendant's hearsay objection, the statement that Gervais believed the defendant's actions to have been deliberate would not have been placed before the jury. We hold that the court's error in permitting introduction of this evidence requires a reversal of the defendant's conviction. *See* N.H. R. EV. 701, 704; *see also* FED. R. EVID. 704(b).

*Reversed and remanded.*

All concurred.