Hillsborough-northern judicial district
No. 2001-564

### THE STATE OF NEW HAMPSHIRE

v.

### JULIO RAMOS

Argued: October 9, 2002
Opinion Issued: February 14, 2003

*Philip T. McLaughlin*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Richard E. Samdperil*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

BROCK, C.J. The defendant, Julio Ramos, was convicted by a jury of one count of felonious sexual assault, *see* RSA 632-A:3 (Supp. 2002), and one

count of aggravated felonious sexual assault, *see* RSA 632-A:2 (Supp. 2002), against L.B. He was also convicted of one count of aggravated felonious sexual assault against A.O., *see id.* The defendant appeals, arguing that the Superior Court (*Barry*, J.) erroneously denied his motion to sever the charges for trial. Because we adopt a new standard for our trial court to utilize in the granting or denial of severance, we reverse and remand.

The defendant is the half brother of Vilma and Maria Ramos. Maria is the mother of A.O. and Vilma is the mother of L.B. The charges involving A.O. concern incidents occurring during the last two weeks of November 1999, when the defendant lived with A.O.'s family and shared a bedroom with A.O. A.O., who is mildly mentally retarded and, at the time, was twenty-three years old, slept on a couch, while the defendant slept in A.O.'s bed. On at least three occasions during this two-week period, the defendant shook A.O. awake, threatened to hurt him, his mother, and grandmother, and then performed fellatio on him. A.O. did not immediately report these incidents.

The charges involving L.B. arose out of an incident that occurred on September 2, 2000, when L.B.'s grandmother, Dolores Rodriguez, was babysitting him and six other children at her apartment. L.B. was eight years old at the time. The defendant was temporarily living with Rodriguez, sleeping on a mattress in a corner of her bedroom. At some point in the evening, Rodriguez brought L.B. into her bedroom. The defendant asked L.B. to lie down next to him on the mattress on the floor. The defendant then started to rub L.B.'s buttocks with his hand. After approximately fifteen minutes, Rodriguez left the bedroom to use the bathroom. When she returned, she saw the defendant touching L.B.'s "whole body," and leaving his hand on L.B.'s genital area. L.B. testified that the defendant put his hand down his pants and fondled his penis.

When Vilma returned to Rodriguez's apartment that evening, she learned about what had happened. She took L.B. to the police station and reported the assault. The next morning, she called her sister Maria to tell her what had happened. Maria then questioned her son, A.O., who revealed that in November 1999, the defendant had assaulted him as well. Eventually, Maria reported the assault to the police.

In October 2000, a grand jury issued six indictments, four alleging assaults against A.O. and two alleging assaults against L.B. The defendant moved to sever the A.O. charges from the L.B. charges, which the court denied. Following a trial on all six indictments, the State *nol prossed* one of the A.O. indictments. The jury acquitted the defendant on two of the A.O. indictments, but found him guilty on the remaining three indictments.

On appeal, the defendant argues that severance was required because the charges involving A.O. and those involving L.B. were unrelated. Consolidation, he argues, served no legitimate State goal and permitted the jury to consider evidence that otherwise would have been inadmissible under New Hampshire Rule of Evidence 404(b), thus depriving him of his fundamental rights to due process and a fair trial. *See* U.S. CONST. amends. V, XIV; N.H. CONST. pt. I, art. 15.

The State counters that consolidation was appropriate because the charges involving A.O. and those involving L.B. pertain to discrete events, the evidence of which was concise, simple and not likely to confuse the jury. The State further asserts that evidence of one set of charges would have been admissible under Rule 404(b) in a separate trial of the other set of charges to explain the delay in reporting the A.O. assaults. *Cf. State v. Berry*, 148 N.H. 88, 91-92 (2002). Even if evidence of one set of charges would have been inadmissible in a separate trial of the other set of charges, the State argues that consolidation did not prejudice the defendant and furthered the legitimate public policy of conserving judicial and prosecutorial resources.

Because Part I, Article 15 of the State Constitution is at least as protective of the defendant's rights in this area as the Federal Constitution, we need not undertake a separate federal analysis. *See State v. Haley*, 141 N.H. 541, 543-45 (1997). We consider the defendant's claims under our State Constitution and use federal law only as an analytic aid. *See State v. Cobb*, 143 N.H. 638, 655 (1999).

We will uphold the trial court's decision not to sever cases unless we conclude that the decision constitutes an unsustainable exercise of discretion. *State v. Manna*, 130 N.H. 306, 309 (1988); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining "unsustainable exercise of discretion" standard). To show that the trial court's decision is unsustainable, the defendant must demonstrate that the ruling was "clearly untenable or unreasonable to the prejudice of his case." *Lambert*, 147 N.H. at 296 (quotation omitted). The focus of our inquiry is upon whether joinder jeopardized the defendant's right to a fair trial. *See State v. Winders*, 127 N.H. 471, 473 (1985).

Traditionally, we have liberally permitted joinder of criminal offenses for trial, asking only "whether the evidence in support of each offense was brief, simple and unlikely to confuse a jury, and easily referable to each crime." *State v. Cote*, 129 N.H. 358, 367 (1987); *see State v. Fecteau*, 133 N.H. 860, 869 (1991). We have held that charges need not be "related or part of a common scheme or plan" to be consolidated. *Manna*, 130 N.H. at 310; *see State v. Bergmann*, 135 N.H. 97, 102 (1991). We have also held

that evidence of each crime need not be admissible in a trial of the other under Rule 404(b). *See Bergmann*, 135 N.H. at 102.

Under our traditional approach, we would be compelled to affirm joinder of the charges at issue because, as the State notes and as our review of the record reveals, the evidence in support of each charge was brief, simple, not likely to confuse the jury, and easily referable to each crime.

The trial on the two sets of charges lasted just two days. The two events that were the subject of the original six indictments were discrete events that occurred over nine months apart, and the evidence of each event was easily separable from that of the other. Four witnesses testified as to the assaults on A.O., while five different witnesses testified as to the assault on L.B. In addition, the court cautioned the jury to consider each offense separately. Further, the jury demonstrated that it considered each charge separately by acquitting the defendant on two of the charges involving A.O. *See United States v. Edgar*, 82 F.3d 499, 504 (1st Cir.) (no prejudice from joinder where jury showed itself "clearly capable of discriminating among the evidence applicable to each count" by acquitting defendant on one count, being unable to reach a verdict on nine counts, and convicting defendant on three counts), *cert. denied*, 519 U.S. 870 (1996); *Cote*, 129 N.H. at 368. Moreover, although not required by our jurisprudence, we note that the evidence of the L.B. assaults might have been admissible in a separate trial of the A.O. charges to explain A.O.'s delay in reporting. *Cf. Berry*, 148 N.H. at 91-92.

We believe, however, that our traditional approach fails to provide meaningful guidance to trial courts endeavoring to adhere to it, and, thus, has proven to be unworkable. *See Providence Mut. Fire Ins. Co. v. Scanlon*, 138 N.H. 301, 304 (1994) (principle of *stare decisis* does not preclude court from revisiting decision proved to be unworkable).

For instance, we have approved joining related charges of child sexual abuse because the evidence of each was brief, simple and unlikely to confuse the jury, *see State v. Hennessey*, 142 N.H. 149, 154-55 (1997), and also have approved severing them because of the "high potential for prejudice" in joining these types of charges, *see State v. LaBranche*, 118 N.H. 176, 177-79 (1978). We have sanctioned joining charges arising from the same criminal incident, *see Cobb*, 143 N.H. at 655 (not unreasonable to consolidate child pornography and attempted felonious sexual assault charges when they arose from same occasion), and also have approved severing these types of charges, *see State v. Lainey*, 117 N.H. 592, 594-95 (1977) (appropriate to sever burglary charge from charge of committing burglary with revolver).

Our jurisprudence has permitted trial courts nearly unlimited discretion in joinder matters, making the task of principled appellate review difficult,

if not impossible. Not surprisingly, we have rarely reversed a trial court's decision regarding joinder or severance.

While alone this is sufficiently compelling for us to depart from our prior precedent, we note, additionally, that our permissive approach to joinder, particularly of unrelated offenses, is at odds with the Federal Rules of Criminal Procedure, the American Bar Association (ABA) Standards for Criminal Justice, the Uniform Rules of Criminal Procedure and the jurisprudence in other States.

We have made no distinction between related and unrelated offenses, permitting joinder when the charges are completely unrelated and the evidence distinct as well as when the charges are similar and the evidence overlaps. *Compare Winders*, 127 N.H. at 473-74 (joinder of two burglary charges, one committed in 1984 and the other in 1983), *and Bergmann*, 135 N.H. at 98-99, 101-02 (consolidation of charges alleging that in 1984, the defendant had committed aggravated felonious sexual assault against one child and, in 1988, had committed felonious sexual assault against child's friend), *and Fecteau*, 133 N.H. at 863, 869-70 (consolidating charges regarding assault in Durham against one woman and assault in Dover against another woman), *with Hennessey*, 142 N.H. at 154-55 (consolidating "closely related" sexual assaults committed against two brothers), *and State v. Whitney*, 125 N.H. 636, 639 (1984) (joining two witness tampering charges in part because they could be proved by common evidence). Our case law thus permits joinder of charges against a single defendant under virtually all circumstances.

By contrast, under the Federal Rules of Criminal Procedure, ABA Standards for Criminal Justice, the Uniform Rules of Criminal Procedure, and, according to jurisprudence from other States, related and unrelated offenses are treated differently for joinder purposes.

## I. Federal Scheme

The Federal Rules of Criminal Procedure permit joinder of offenses against a single defendant only if the offenses charged are: (1) based upon the same act or transaction; (2) based upon two or more acts or transactions connected together or constituting parts of a common scheme or plan; or (3) based upon two or more acts or transactions of the same or similar character. *See* FED. R. CRIM. P. 8(a), 13.

"These first two grounds for joinder ... have caused little difficulty or controversy. The desirability of joinder of offenses arising out of the same or related acts is apparent." 1A C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 143, at 33 (3d ed. 1999). "There is controversy, however, about the third of the tests" that focuses upon whether the offenses are of the "same or similar character." *Id.*

Courts have devised different tests to determine whether offenses are of the "same or similar character." For instance, to determine whether offenses are properly joined because they are of the "same or similar character," the First Circuit Court of Appeals examines such factors as "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *Edgar*, 82 F.3d at 503 (quotation omitted). By contrast, in the Second Circuit, crimes are "similar" if they are "somewhat alike" or share "a general likeness." *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) (quotation omitted).

"Decisions applying the 'same or similar character' test have generally failed 'to provide criteria which would provide guidance as to the precise scope of this rule.'" WRIGHT, *supra* at 41; *see United States v. Buchanan*, 930 F. Supp. 657, 662 (D. Mass. 1996) ("the line drawing between permissible and improper joinder sometimes becomes imprecise and the standards applied confusing"). For this reason and others, the "same or similar character" language has been criticized. *See* 4 W. LAFAVE ET AL., CRIMINAL PROCEDURE § 17.1(b) at 597-98 (1999); *Werner*, 620 F.2d at 927-28.

Some commentators have noted that where offenses are joined merely because they are of the "same or similar character,"

> the benefits to the government are substantially reduced and the benefits to the defendant are outweighed by substantial disadvantages. For example, unrelated offenses normally involve different times, separate locations, and distinct sets of witnesses and victims. As a result, separate trials would not involve substantial duplication of evidence, repeated burdens on witnesses and victims, and increased drain upon prosecutorial and judicial resources.

> At the same time, the joint trial of offenses creates a significant risk that the jury will convict the defendant upon the weight of the accusations or upon the accumulated effect of the evidence. The defendant can also be disadvantaged if the available defenses are inconsistent or if the defendant wants to testify as to one offense but not as to others.

LAFAVE, *supra* at 597-98 (quotation omitted).

As the Second Circuit observed:

> When all that can be said of two separate offenses is that they are of the "same or similar character," the customary

justifications for joinder (efficiency and economy) largely disappear. Whereas the joinder of offenses "based on the same act or transaction" or of offenses based "on two or more acts or transactions connected together or constituting parts of a common scheme or plan" is reasonable and desirable both from the government's and the defendant's perspective, the same cannot be said for joinder of offenses of the "same or similar character." In the former situations, the government should not be put to the task of proving what is essentially the same set of facts more than once, and the defendant should be spared the task of defending more than once against what are essentially the same, or at least connected, charges. In the latter circumstance, however, the only time likely saved by joinder of "same or similar character" offenses is the time spent selecting a jury, and perhaps the time spent examining character witnesses. On the whole, however, the "trials" on the joined charges are distinct. At the same time, the risk to the defendant in such circumstances is considerable.

*United States v. Halper*, 590 F.2d 422, 430 (2d Cir. 1979) (citations omitted).

Under the federal scheme, even though offenses have been properly joined, the court nonetheless may order separate trials if joinder would prejudice the defendant. *See Werner*, 620 F.2d at 928; FED. R. CRIM. P. 14. Prejudice can be found where: (1) the defendant may become embarrassed or confounded by presenting separate defenses; (2) the jury may use the evidence of one of the crimes to infer criminal disposition on the part of the defendant from which the defendant's guilt of the other crime or crimes charged may be found; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when if considered separately, it would not so find. *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964); *see* LAFAVE, *supra* at 598. The court must weigh prejudice to the defendant against "the obviously important considerations of economy and expedition in judicial administration." *Drew*, 331 F.2d at 88.

Where the issue is whether the defendant was prejudiced because the jury had available to it evidence of other crimes, courts generally ask two questions: (1) whether evidence of the other crimes would be admissible even if the court had severed the offenses; and (2) if not, whether "the evidence of each crime was simple and distinct." *Id.* at 89-92; *see* LAFAVE, *supra* at 600.

If the evidence of other crimes would have been admissible in separate trials, then there is no prejudice to the defendant from joining the offenses

for trial. "[T]he prejudice that might result from the jury's hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials." *Drew*, 331 F.2d at 90. Even when the evidence of one crime would have been inadmissible in a separate trial of the other, courts have found no prejudice from joinder when the evidence of each crime is simple and distinct. *Id.* at 91.

Although we have never fully embraced the federal approach to joinder of offenses for trial, we have cited the federal rules regarding joinder of criminal offenses for trial with approval. *Whitney*, 125 N.H. at 639; *State v. Freije*, 109 N.H. 290, 291 (1969). Moreover, our traditional test, which focuses upon whether the evidence in support of each offense was "brief, simple and unlikely to confuse a jury, and easily referable to each crime," *Cote*, 129 N.H. at 367, mirrors the federal "simple and distinct" test for prejudicial joinder.

## II. ABA Standards

The ABA Standards for joinder and severance of criminal offenses for trial differ from the Federal Rules of Criminal Procedure in at least the following respects. The ABA Standards categorize offenses as either "related" or "unrelated." "Related" offenses are those "based upon the same conduct, upon a single criminal episode, or upon a common plan." 2 AM. BAR ASS'N STANDARDS FOR CRIMINAL JUSTICE, ch. 13, at 13·9 (1978). "Unrelated" offenses are those that are not "related." *Id.* at 13·10. Under the ABA Standards, offenses that are "of the same or similar character" are considered "unrelated." *Id.* at 13·11.

The ABA Standards permit joinder of both related and unrelated offenses for trial, upon application of either the prosecuting attorney or the defense. *Id.* at 13·11. ABA Standard 13-2.1 "neither requires nor recommends the joint trial of offenses," however. *Id.* at 13·12. To determine whether a joint trial is appropriate, other ABA Standards control. *Id.* Under the ABA Standards, severance of related charges is discretionary. *See id.* at 13·29. By contrast, ABA Standard 13-3.1(a) grants the prosecution and the defense an absolute right to sever unrelated charges. *Id.* at 13·29.

According to the commentary to the standards, "unlimited joinder of unrelated offenses has been authorized for the occasional case when the prosecutor and the defendant agree that a joint trial of the offense is desirable. In most cases, however, joint trials of unrelated offenses are difficult to justify because the defendant suffers all of the disadvantages of a joint trial while the prosecutor achieves few if any of the benefits of a joint trial." *Id.* at 13·30. Where offenses are unrelated, "the benefits to the

government are substantially reduced and the benefits to the defendant are outweighed by substantial disadvantages." *Id.* at 13·13.

The commentary explains that "[t]he conflict between fair trial and multiple prosecution concerns, and the special features of similar character offenses, have created a dilemma with respect to the joinder of unrelated offenses." *Id.* at 13·14. While the federal rules resolve the dilemma by permitting the joinder of unrelated offenses only if they are of a "similar character," the original ABA Standards provided an "ingenious solution" to the dilemma. *Id.* The original standards authorized joinder of "similar character" offenses, but gave the defendant the absolute right to sever these offenses. The revised standard permits joinder of all unrelated offenses, not only those that are of "similar character," and gives the defendant the corresponding right to sever all unrelated offenses. *Id.* at 13·14-13·15.

### III. Uniform Rules of Criminal Procedure

In many respects, the Uniform Rules of Criminal Procedure regarding joinder and severance of offenses for trial parallel the ABA Standards. Like the ABA Standards, the Uniform Rules categorize offenses as either "related or unrelated." *See* UNIF. R. CRIM. P. 471, 10 U.L.A. 148-49 (2001). Uniform Rule of Criminal Procedure 471 defines "related" crimes as those that are "within the jurisdiction of the same court and are based upon the same conduct, upon a single criminal episode, or upon a common plan." UNIF. R. CRIM. P. 471(a), 10 U.L.A. at 148. Under the Uniform Rules, however, only the defendant has the right to move for joinder. UNIF. R. CRIM. P. 471(b), 10 U.L.A. at 149. The court may also order joinder if no party objects and the crimes could have been joined in a single indictment. *See* UNIF. R. CRIM. P. 473, 10 U.L.A. at 152.

If the defendant has moved to join unrelated crimes, the court shall join them "upon a showing that failure to try the charges together would constitute harassment, unless the court determines that because the prosecuting attorney does not presently have sufficient evidence to warrant trying one or more of the charges, or for some other reason, the joinder would defeat the ends of justice." UNIF. R. CRIM. P. 471(d), 10 U.L.A. at 149.

If the defendant has moved to join related crimes, the court shall join them "unless it determines that because the prosecuting attorney does not presently have sufficient evidence to warrant trying one or more of the charges, or for some other reason, the joinder would defeat the ends of justice." UNIF. R. CRIM. P. 471(b), 10 U.L.A. at 149.

Subject to the defendant's right to joinder, as under the ABA Standards, either party has a right to severance if the crimes are unrelated. UNIF. R.

CRIM P. 472(a)(1), 10 U.L.A. at 150. Subject to the defendant's right to joinder, the court may grant severance of related charges, before trial, if it determines that severance is "appropriate to promote," and, during trial, if the defendant has consented to it, or if, upon a finding of manifest necessity, it determines that severance is "necessary to achieve" a fair determination of the defendant's guilt. UNIF. R. CRIM. P. 472(a)(2)-(3), 10 U.L.A. at 150.

*IV. Other States*

The "overwhelming majority" of States have adopted the language of the federal rules of criminal procedure, or language that is very similar to it. LAFAVE, *supra* at 593, 595-96. In these States, as in federal courts, offenses may be joined if they are based on the same act or transaction, or are part of a common scheme or plan, or are of the "same or similar character." *See id.* at 595-96.

Some States have omitted the federal provision regarding joining offenses that are of the "same or similar character," while other States have limited it. *Id.* at 596. For instance, some States permit joinder of "same or similar character" offenses only if the defendant consents or when the evidence of one offense would be admitted in a separate trial of the other. *Id.* Other States have followed the ABA Standards and have given defendants an absolute right to sever when offenses of the "same or similar character" have been joined. *See Dingler v. State*, 211 S.E.2d 752, 753 (Ga. 1975) (adopting severance-of-right provision in ABA Standards); ARK. R. CRIM. P. 22.2(a) (defendant has right to sever offenses of the same or similar character); MASS. R. CRIM. P. 9 (only by defendant's consent or motion may unrelated offenses be joined); VT. R. CRIM. P. 14(b)(1)(A) (when offenses of same or similar character are joined, defendant has right to severance); MINN. R. CRIM. P. 17.03, subd. 3(1)(a) (allowing defendant to obtain severance as matter of right when offenses are unrelated).

*V. New Standards*

Based upon the above, we are persuaded that our traditionally permissive approach to joinder is no longer appropriate. We are also persuaded that the ABA Standards provide the best approach to joinder, permitting it for all cases, but granting either the defense or prosecution the absolute right to sever unrelated cases. Accordingly, we today adopt the ABA Standards for joinder and severance of criminal offenses for trial. "While we recognize the value of stability in legal rules, we have also acknowledged that the doctrine of stare decisis is not one to be either rigidly applied or blindly followed. The stability of the law does not require

the continuance of recognized error." *Matarese v. N.H. Mun. Assoc. Prop.-Liab. Ins. Trust,* 147 N.H. 396, 400 (2002) (quotation omitted).

Henceforth, any two or more offenses committed by the same defendant may be joined for trial, upon the application of the prosecuting attorney or the defense. 2 AM. BAR ASS'N STANDARDS FOR CRIMINAL JUSTICE, ch. 13, at 13·11. Whenever two or more unrelated offenses have been joined for trial, the prosecuting attorney or the defendant shall have a right to severance of them. *Id.* at 13·29. "Unrelated" offenses are those that are not "related." *Id.* at 13·10. "Related" offenses are those that are based upon the same conduct, upon a single criminal episode, or upon a common plan. *Id.* at 13·9.

The trial court may grant severance of related offenses before trial, upon application of either the defendant or the prosecuting attorney, whenever severance is deemed appropriate to promote a fair determination of the defendant's guilt or innocence. *Id.* at 13·29. When evaluating whether severance is appropriate to promote or necessary to achieve a fair determination of the defendant's guilt or innocence, the court should consider, among other factors, whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently to each offense. *Id.*

Applying these standards to the instant case, we hold that the L.B. charges and the A.O. charges were "unrelated." It is evident that they did not arise from the same transaction or constitute the same act. Nor has the State asserted that they were part of a common plan. Indeed, the State argues that the only evidentiary connection between the two offenses is that the assaults against L.B. explain why A.O. delayed reporting the assaults against him. The defendant had an absolute right to severance of these offenses and, thus, under the standards we adopt today, the trial court erroneously denied his motion to sever.

*Reversed and remanded.*

NADEAU and DUGGAN, JJ., concurred; DALIANIS, J., dissented.

DALIANIS, J., dissenting. I agree with the majority that the American Bar Association Standards for Criminal Justice provide a sound approach to joinder. I dissent, however, for two reasons.

First, I believe that by creating new standards for joinder in criminal trials, the majority has decided an issue that is not squarely before the court. The defendant did not argue that the court should adopt new standards for joinder below, and neither party has argued this on appeal.

Second, I believe that this case is not the proper venue for adopting what is essentially a rule of criminal procedure. In my view, the adoption of a new rule of criminal procedure should be accomplished through rulemaking. *See* SUP. CT. R. 51(A)(1)(b). The federal courts and nearly every State that has considered the issue have adopted standards for joinder in criminal trials through rules. *See* 4 W. LAFAVE ET AL., CRIMINAL PROCEDURE § 17.1(b) at 595-96, 596 n.18 (1999). The court's rulemaking procedures provide the public, the bench and the bar an opportunity to offer comments and suggestions before any new rule is adopted. *See* SUP. CT. R. 51(A)(1)(a).

Unlike the majority, I would affirm the decision of the trial court and ask the Advisory Rules Committee to consider recommending to the court a rule regarding joinder in criminal trials.