NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2013-058

THE STATE OF NEW HAMPSHIRE

v.

JAMIE LOCKE

Argued: January 23, 2014
Opinion Issued: June 13, 2014

Joseph A. Foster, attorney general (Stacey P. Coughlin, attorney, on the brief and orally), for the State.

Christopher M. Johnson, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, Jamie Locke, appeals her conviction for second degree assault following a jury trial in Superior Court (Smukler, J.). She argues that because in her first trial the jury acquitted her of first degree assault, retrying her for second degree assault violated her State and Federal constitutional guarantees against double jeopardy. See N.H. CONST. pt. I, art. 16; U.S. CONST. amend. V; RSA 631:1 (2007), :2 (Supp. 2013). Alternatively, she argues that the State should have been required to join in one trial all charges arising from the same criminal episode. We take this opportunity to adopt such a rule of compulsory joinder of criminal charges and reverse.

Both charges arise from events in November 2009, when the defendant, in concert with two others, caused the victim to sustain bodily injuries by throwing him over an embankment into the Merrimack River, and then leaving him there, when he was incapacitated as a result of consuming alcohol. In January 2011, a grand jury indicted the defendant on several charges based upon this incident: (1) conspiracy to commit murder; (2) two counts of accomplice to attempted murder; (3) attempted murder; and (4) first degree assault, both as principal and accomplice. Before the defendant's first jury trial, the trial court dismissed one of the accomplice to attempted murder charges. The jury in the first trial acquitted her of conspiracy to commit murder, attempted murder, and first degree assault but convicted her of the remaining accomplice to attempted murder charge. In August 2011, the trial court granted the defendant's motion to set aside the guilty verdict on the ground that the accomplice to attempted murder indictment failed to allege a crime. The State later moved for a mistrial on the ground that the jury foreperson had announced the wrong verdict for the conspiracy to commit murder charge after becoming confused by the indictments. The trial court denied the State's motion, finding that it had waived any objection to the accuracy of the jury's verdict by failing to move to poll the jury.

Before the trial court ruled on the State's motion for mistrial, a grand jury returned an indictment against the defendant for second degree assault, both as principal and accomplice. The record does not disclose why the State did not seek this indictment originally. Before her second trial commenced, the defendant moved to dismiss this charge "on the basis that it alleges an offense for which [she] has already stood trial and been acquitted" and that to allow the State to prosecute her for this offense would violate her state and federal constitutional guarantees against double jeopardy. The trial court denied the defendant's motion. After the jury convicted the defendant of the second degree assault charge, she moved to set aside the verdict, again arguing that the second degree assault charge was the "same" as the first degree assault charge for double jeopardy purposes. The trial court denied this motion, and this appeal followed.

The defendant argues that for double jeopardy purposes, the second degree assault charge constitutes the same offense as the first degree assault charge of which she was acquitted. See State v. Glenn, 160 N.H. 480, 485-86 (2010). Alternatively, she argues that even if the first degree assault and second degree assault charges are not the "same" for double jeopardy purposes, "the absence of any good reason not to [have brought] the second degree assault charge in the first trial should deprive the State of the opportunity to bring it after [she] was acquitted at that trial." Consistent with our policy of deciding cases on constitutional grounds only when necessary, we address the defendant's alternative argument first. See State v. Hernandez, 159 N.H. 394, 401 (2009).

2

The defendant's alternative argument is based upon dicta in State v. Heinz, 119 N.H. 717, 723 (1979), in which we stated: "Where the multiple offenses could have been addressed in the first trial, it may be appropriate to require the prosecuting authorities to join all charges growing out of the same acts or transaction so that the defendant will not be harassed by the necessity of repeated trials." The defendant invites us to extend that dicta by adopting a common law rule of compulsory joinder of criminal charges arising from the same criminal episode. For the reasons that follow, we accept her invitation.

In the instant case, we are troubled by the fact that the State brought the second degree assault charge against the defendant after the trial on the first set of charges concluded even though all of the charges arose from the same criminal episode. Although we recognize that the State has "broad discretion when charging a defendant with multiple offenses arising out of a single event," and although there is no charge of prosecutorial misconduct here, we "believe . . . that it is important to exercise discretion with more circumspection when charging crimes under these circumstances." State v. Krueger, 146 N.H. 541, 543 (2001) (quotation omitted). "Forcing the defendant to endure more than one criminal proceeding . . . at the will of the prosecutor" is harmful to the criminal defendant and to the justice system as a whole. Poulin, Double Jeopardy Protection from Successive Prosecution: A Proposed Approach, 92 Geo. L. J. 1183, 1208 (2004). Requiring a defendant to undergo a separate proceeding on new charges arising from the same criminal episode subjects that defendant to "embarrassment, expense and ordeal" and compels the defendant "to live in a continuing state of anxiety and insecurity." Green v. United States, 355 U.S. 184, 187 (1957). Moreover, "[m]ultiple prosecutions . . . give the State an opportunity to rehearse its presentation of proof, thus increasing the risk of an erroneous conviction for one or more of the offenses charged." State v. Feliciano, 115 P.3d 648, 659 (Haw. 2005) (quotation omitted). "[T]he State with all of its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense." Green, 355 U.S. at 187.

Although in State v. Gosselin, 117 N.H. 115, 118-19 (1977), we declined to adopt a same criminal episode test to determine whether two offenses are the same for double jeopardy purposes, we specifically contemplated adopting that test as a common law rule of joinder. There, we observed that "[a]ny abuse by prosecutors in harassing defendants could be remedied . . . by the adoption of court rules requiring joinder of criminal charges." Gosselin, 117 N.H. at 119 (citations omitted); see Heinz, 119 N.H. at 723. Adopting a same criminal episode test for compulsory joinder of criminal charges instead of as a constitutional rule has several benefits:

> First, we can still accomplish the primary aim of . . . requir[ing] the defendant to be tried in a single trial on similar offenses or multiple

offenses arising out of the same transaction. Second, the defendant can still retain his traditional right to move for a severance because of prejudicial joinder . . . .

Third, adopting a procedural rule permits some flexibility in its application, since we will not be bound by the rigidity of a constitutional doctrine. . . .

Fourth, in setting a procedural joinder rule, it can be designed to permit a broader right of joinder than was heretofore available. Its scope can be broader than the double jeopardy test for the same offense, since its purpose is to alleviate the harassment and expense that result to a defendant by reason of separate trials for related offenses.

State ex rel. Watson v. Ferguson, 274 S.E.2d 440, 444 (W. Va. 1980), superseded by court rule as stated in State ex rel. Games-Neely v. Sanders, 565 S.E.2d 419, 425 n.3 (W. Va. 2002).

Courts in other jurisdictions have adopted such a common law rule, and we find their reasoning persuasive. See, e.g., id. (adopting under court's "inherent rule-making power" a same transaction test for compulsory joinder); Commonwealth v. Campana, 314 A.2d 854, 855-56 (Pa. 1974) (clarifying that court in earlier case had adopted a same transaction test for compulsory joinder under the court's "supervisory powers" rather than as a constitutional doctrine); see also State v. Gallegos, 152 P.3d 828, 832-33 (N.M. 2007) (explaining that "numerous . . . jurisdictions requir[e] prosecutors to charge together all crimes arising from a defendant's conduct or series of acts" and observing that this may be accomplished legislatively "or through a court's general supervisory power over rules of criminal procedure"); Vestal & Gilbert, Preclusion of Duplicative Prosecutions: A Developing Mosaic, 47 Mo. L. Rev. 1, 15-22 (1982); Klein, Double Jeopardy's Demise, 88 Cal. L. Rev 1001, 1031 n.104 (2000) (book review).

For instance, in State v. Gregory, 333 A.2d 257 (N.J. 1975), the New Jersey Supreme Court "adopted [a] compulsory joinder rule barring separate trials for multiple offenses that are known to the prosecuting attorney, when the offenses are based essentially on the same conduct or arise from the same criminal episode." State v. Williams, 799 A.2d 470, 473 (N.J. 2002). In adopting that rule, the court "relied on the broad administrative and procedural powers vested in it by the State Constitution." Id. The court explained that the "common law was properly concerned with the protection of the defendant from governmental harassment and oppression by multiple prosecution for the same wrongful conduct." Gregory, 333 A.2d at 258. As the court acknowledged, the common law "embodied the principle cherished by all free men that no person may be twice put in jeopardy for the same offense."

4

Id.; see Crist v. Bretz, 437 U.S. 28, 33 (1978) (discussing common law roots of the Fifth Amendment guarantee against double jeopardy); Fay v. Parker, 53 N.H. 342, 388-89 (1872) (discussing common law roots of Double Jeopardy Clause of State Constitution). The court adopted the rule to "satisfy . . . considerations of fairness and reasonable expectations" and to "promote . . . considerations of justice, economy, and convenience." Gregory, 333 A.2d at 263 (quotation omitted).

Although the court referred the precise wording of the rule to the New Jersey Criminal Practice Committee, it adopted for immediate implementation Model Penal Code Sections 1.07(2) and 1.07(3), id., which provide:

> (2) Limitation on Separate Trials for Multiple Offenses. Except as provided in Subsection (3) of this Section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

> (3) Authority of Court to Order Separate Trials. When a defendant is charged with two or more offenses based on the same conduct or arising from the same criminal episode, the Court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires.

Model Penal Code §§ 1.07(2), (3). The New Mexico Supreme Court similarly adopted a compulsory joinder rule to "avoid disorderly criminal procedures that . . . risk prejudice to the accused." Gallegos, 152 P.3d at 833 (quotation and ellipsis omitted); see State v. Tanton, 540 P.2d 813, 815-16 (N.M. 1975).

We recognize that the adoption of a new rule of criminal procedure should ordinarily be accomplished through rulemaking. See Sup. Ct. R. 51(A)(1)(b); see also State v. Ramos, 149 N.H. 118, 129 (2003) (Dalianis, J., dissenting). However, because of the nature of the interests involved, until the Advisory Committee on Rules has an opportunity to consider the "precise contours and details" of a mandatory joinder rule, Gregory, 333 A.2d at 263, or until the legislature has had an opportunity to address the matter, we hold, following the approach of other courts, that the common law of New Hampshire incorporates the principles set forth in Model Penal Code Section 1.07(2). See In re Search Warrant (Med. Records of C.T.), 160 N.H. 214, 226 (2010); see also State v. Donohue, 150 N.H. 180, 183 (2003) (recognizing that our Criminal Code is largely derived from the Model Penal Code). In so holding, we observe that the result we reach under the common law does not conflict with any

existing statute or court rule. In particular, we note that Superior Court Criminal Rule 97-A and Circuit Court-District Division Rule 2.9-A, by their terms, address permissive joinder of offenses, not the mandatory joinder requirements we adopt herein.

Model Penal Code Section 1.07(2) is "[b]y far the most efficient and enthusiastically received proposal for preventing successive prosecutions." Commonwealth v. Campana, 304 A.2d 432, 438 (Pa.), vacated and remanded, 414 U.S. 808 (1973), affirmed, 314 A.2d 854 (Pa. 1974). As to Section 1.07(3) of the Model Penal Code, unlike the New Jersey Supreme Court, we have no need to adopt it because it is substantially the same as Superior Court Criminal Rule 97-A(II), which provides: "If it appears that a joinder of offenses is not in the best interests of justice, the judge may upon his or her own motion or the motion of either party order an election of separate trials or provide whatever other relief justice may require."

Consistent with, and for all of the reasons set forth in our decision in State v. Tierney, 150 N.H. 339, 342-45 (2003), which addressed whether the permissive joinder rule we adopted in Ramos applied prospectively or retroactively, we hold that the requirement for compulsory joinder we announce today applies to the defendant and to all similar cases pending on direct review. See Ramos, 149 N.H. at 128 (applying new rule of permissive joinder to defendant); see also Gregory, 333 A.2d at 264.

In applying Model Penal Code Section 1.07(2) to the instant case, we find Gregory to be instructive. In Gregory, as in the instant case, the defendant engaged in a single criminal episode. In Gregory, the episode concerned the sale of heroin to an undercover police officer. Gregory, 333 A.2d at 257. On the night in question, an undercover officer visited a Newark apartment and purchased a small quantity of heroin from the defendant. Id. The officer saw the defendant go into the apartment's bathroom and remove the glassine envelope containing heroin from a stack of similar envelopes in a medicine cabinet. Id. The defendant was initially indicted for the single sale to the undercover officer and was not indicted at that time for possession of heroin or for possession of heroin with the intent to distribute. Id. at 257-58. The defendant was tried and convicted on the indictment alleging the sale. Id. Subsequently, the defendant was indicted for possession with intent to distribute. Id. at 258. He was tried and convicted on those charges as well. Id.

The New Jersey Supreme Court concluded that the charges in Gregory "were based on the same conduct or arose from the same criminal episode." Id. at 263. On the day of the sale, "the defendant had possession of all of the heroin in the bathroom cabinet when the undercover officer came to his apartment." Id. Moreover, the prosecutor "could have sought indictment for

(1) the sale or (2) the possession with intent to distribute, or both." Id. at 263-64. "He sought and obtained indictment only for the sale and not until after trial thereon was completed did he seek and obtain indictment for the possession with intent to distribute." Id. at 264. The court held that "[t]his course was patently unfair to the defendant and was in clear conflict with the goals and terms of [Model Penal Code section] 1.07(2)." Id.

Similarly, in the instant case, the first degree assault charge and the second degree assault charge "were based on the same conduct or arose from the same criminal episode within the contemplation of section 1.07(2)." Id. at 263. Both charges arose from a single event in November 2009, when the defendant, in concert with two others, threw an incapacitated victim over an embankment into the Merrimack River and then left him there. Like the prosecutor in Gregory, the State in this case could have indicted the defendant on both charges at the same time. See id. at 263-64. Instead, like the prosecutor in Gregory, the State obtained one indictment first (the first degree assault charge) and only after the defendant was tried on that charge was the second indictment obtained (the second degree assault charge). See id. We agree with the New Jersey Supreme Court that such a course is "patently unfair" and conflicts with "the goals and terms of [Section] 1.07(2)." Id. at 264. "Although the Model Penal Code cautiously refrains from any inflexible definition of the 'same criminal episode[,]' it leaves no room for doubt that it contemplates compulsory joinder" in a case such as this. Id. at 262. "Upon any fair view of the circumstances," the defendant's first degree assault and second degree assault charges "were based on the same conduct or arose from the same episode within the contemplation of section 1.07(2)." Id. at 263. Accordingly, we reverse the defendant's conviction for second degree assault.

Because we resolve this case on common law grounds, we do not address the merits of the parties' constitutional arguments, although we do offer the following observations for the benefit of future litigants. Our review of our double jeopardy jurisprudence under the State Constitution reveals that although we have consistently articulated our test, we have not consistently applied it. Our test, which we have referred to as the "same evidence" test, provides: "Two offenses will be considered the same for double jeopardy purposes unless each requires proof of an element that the other does not. We focus upon whether proof of the elements of the crimes as charged will in actuality require a difference in evidence." State v. Gingras, 162 N.H. 633, 636 (2011) (quotation and citation omitted). We first articulated that test in Heald v. Perrin, 123 N.H. 468 (1983), superseded on other grounds by RSA 651:2, II-g, as stated in State v. Nickles, 144 N.H. 673 (2000). The plaintiff in Heald was sentenced under both the enhanced sentencing provision of the robbery statute and the felonious-use-of-a-firearm statute. Heald, 123 N.H. at 470. He argued that his sentencing violated the Double Jeopardy Clause because armed robbery and felonious use of a firearm were the same offense. See id. at 470-

71.  We rejected the State's assertion that to determine whether the offenses were the same, we need only examine their statutory definitions.  Id. at 471-72.  The State argued that the two offenses were different because "each offense contains an element which might be proven with evidence different from that which might be required for proof of an element of the other."  Id. at 472.  Specifically, felonious use of a firearm requires the use of a firearm in the commission of any felony, not only in the commission of a robbery, and armed robbery requires the commission of robbery while armed with any deadly weapon, not necessarily a gun.  Id.  We decided that the State's articulation of our "same evidence" test was wrong.  Id. at 472-73.  "We therefore affirm[ed] as the benchmark of the double jeopardy test in this State an inquiry focusing on whether proof of the elements of the crimes as charged will in actuality require a difference in evidence."  Id. at 473.

We concluded that the two offenses were the same for double jeopardy purposes because "in order to prove the plaintiff guilty of armed robbery, the State had to prove each and every fact that was also required to prove the felonious-use charge, and not one single fact more."  Id.  Thus, once the State proved that the plaintiff committed the robbery with a gun, "no additional evidence was necessary in order to prove the elements of the felonious use of a firearm" charge.  Id.  Therefore, because "not a single difference in evidence was required," the two offenses were the same for double jeopardy purposes.  Id. at 473-74.

Although in Heald we focused specifically upon the evidence required to prove each offense, we have not always done so in subsequent cases.  Indeed, we did not do so in State v. Elbert, 128 N.H. 210 (1986), a case decided soon after we decided Heald.  In that case, the issue was whether the defendant could be sentenced for both felonious use of a firearm and attempted murder.  Elbert, 128 N.H. at 211.  The defendant argued that the two offenses were the same for double jeopardy purposes "because the same evidence was necessary to prove the commission of each crime, . . . i.e., once the State proved attempted murder through the use of a gun, it also proved felonious use of a firearm."  Id.  We stated that this articulation of our double jeopardy test was "too broad[ ]."  Id.

We held that double jeopardy did not bar sentencing the defendant for both offenses "even though the underlying offense and the allegations justifying the penalty enhancement are contained in separate indictments containing identical allegations."  Id. at 214.  We reasoned that because the legislature "could constitutionally mandate the result here simply by creating a separate class of attempted murder when perpetrated by an armed defendant[,] [i]t . . . would be formalistic to read [Part I, Article 16] as forbidding the same result when effected by simultaneously prosecuted indictments, separately charging a basic offense and the elements justifying an enhanced penalty."  Id. at 213.

Thus, because the defendant's use of a gun was not used to "enhance" the attempted murder charge, we concluded that the case was distinguishable from Heald. Id.

We also did not focus on the evidence required to prove each offense in State v. Crate, 141 N.H. 489 (1996), State v. Liakos, 142 N.H. 726 (1998), State v. Nickles, 144 N.H. 673 (2000), State v. McKean, 147 N.H. 198 (2001), and Glenn, 160 N.H. 480, although in each of those cases we articulated our test in the same way that we articulated it in Heald. See Crate, 141 N.H. at 491, 492; Liakos, 142 N.H. at 730; Nickles, 144 N.H. at 677; McKean, 147 N.H. at 201; Glenn, 160 N.H. at 486. By contrast, in other cases, we have applied our double jeopardy test similarly to how we applied it in Heald. See State v. Hannon, 151 N.H. 708 (2005); State v. Gooden, 133 N.H. 674 (1990). Although the double jeopardy issues in our cases have arisen in a variety of contexts, e.g., imposition of multiple punishments, successive prosecutions on new charges, retrial after mistrial on some but not all charges, etc., we are unable to discern a consistent approach to double jeopardy analysis in our own cases. Thus, it is doubtful that our double jeopardy cases can be reconciled. We invite parties in future cases to ask us to reconsider our double jeopardy jurisprudence consistent with the principles of stare decisis, see State v. Smith, 165 N.H. __, ___, 86 A.3d 114, 118 (2014), and to suggest a formulation of the double jeopardy test to be applied under our State Constitution.

Reversed.

HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.