NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough – northern judicial district
No. 2012-701


THE STATE OF NEW HAMPSHIRE

v.

CHARLES GLENN, JR.

Argued: January 22, 2014
Reargued: November 12, 2014
Opinion Issued: December 10, 2014


Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally, and Peter Hinckley, assistant attorney general, on the supplemental memorandum of law and orally), for the State.


Lothstein Guerriero, PLLC of Concord (Theodore M. Lothstein on the brief and memorandum of law and orally), for the defendant.


HICKS, J. The defendant, Charles Glenn, Jr., appeals his convictions by a jury of second degree murder, see RSA 630:1-b, I(b) (2007), criminal threatening, see RSA 631:4, I(a), II(a)(2) (2007), attempted armed robbery, see RSA 629:1 (2007); RSA 636:1, I(b), III(a) (2007), falsifying physical evidence, see RSA 641:6 (2007), and unlawful possession of a deadly weapon, see RSA 159:3, I(a), (b)(1) (2014). On appeal, he argues that the Superior Court (Garfunkel, J.) erred by: (1) denying his pretrial motion to dismiss the attempted armed

robbery, criminal threatening, and unlawful possession charges on statute of limitations grounds; (2) instructing the jury that, if it found him guilty of attempted armed robbery, it could presume the requisite mens rea for the second degree murder charge, see RSA 630:1-b, I(b); and (3) sentencing him separately for second degree murder and attempted armed robbery. He also argues that the trial court committed plain error when it did not dismiss the attempted armed robbery indictment on collateral estoppel grounds. Finally, he argues that under the doctrine of common law joinder that we applied in State v. Locke, 166 N.H. 344, 348-49 (2014), all of his non-homicide convictions must be vacated because they arose out of the same criminal episode as the second degree murder charge. We affirm his conviction of second degree murder and vacate his other convictions.

I. Background

A. Crimes

The jury could have found the following facts. In August 2005, the defendant and his girlfriend, Wanda Diaz, lived together in Manchester. Wanda is the sister of Chad Diaz. The defendant and Chad had known each other for years. Chad frequently acted as a middleman in illegal drug deals, putting together buyers and sellers in exchange for a commission. He had previously acted in that capacity for the defendant.

On August 30, 2005, Wanda and the defendant needed money to pay a partial security deposit on their apartment. That day, the defendant spoke to Chad about selling Oxycontin pills to Leonard Gosselin, who was Chad's and Wanda's cousin. Chad called Gosselin, who said that he did not want to purchase the pills. Chad then called his friend, Joe Salvatore, who agreed to purchase ten pills for $500. When Chad heard the same music in the background during his call with Salvatore that he had heard during his call with Gosselin, he assumed that Salvatore and Gosselin were together.

Chad and the defendant arranged for the defendant to bring the pills to Chad's apartment. After letting the defendant into his apartment, Chad turned to lock the apartment's front door. When he turned around, he saw the defendant sitting on the arm of a chair, pulling out a long-barrel revolver from a plastic bag he had been carrying inside a folded shirt. The defendant pointed the revolver at Chad and told Chad that there were no pills and that he needed money to pay his drug supplier. Chad begged the defendant not to shoot him.

After a while, Chad and the defendant heard loud music outside, which Chad believed to be coming from Salvatore's vehicle. The defendant motioned with his gun, indicating that Chad was to move toward the door and said, "Let's go." Once in the hallway of the apartment building, Chad stopped and said, "I'm not going outside with you. I'm not doing this." The defendant

looked at Chad and walked past him. Chad ran back inside his apartment, out its back door, and across the street to a nearby drug store. A few minutes later, Chad received a call from Salvatore. Salvatore asked Chad where he was. Chad then heard Gosselin say, "What are you doing, kid? Are you f[***]ing serious?" The phone then "went dead." A few minutes later, Salvatore again called Chad and said, "This kid just shot Lenny." Police arrived at the scene shortly thereafter. Gosselin's body was removed by ambulance, and he was pronounced dead shortly after arriving at the hospital.

Later that evening, the defendant called a friend, asking for a ride. The defendant told that friend that "he was supposed to stick this kid for some money and some drugs. It didn't happen. The dude started making a scene and he popped him." The defendant fled to Colorado, where he was arrested in September 2005.

### B. First Indictments

On January 20, 2006, a grand jury indicted the defendant on alternative counts of first degree felony murder, see RSA 630:1-a (2007), and second degree murder, see RSA 630:1-b. State v. Glenn, 160 N.H. 480, 483-84 (2010). The first degree felony murder indictment alleged that the defendant "did knowingly cause the death of . . . Gosselin before, after, while engaged in the commission of, or while attempting to commit robbery while armed with a deadly weapon, to wit, a gun, by shooting . . . Gosselin in the back with that deadly weapon." Id. at 484 (quotation omitted). The second degree murder indictment alleged that the defendant "did recklessly cause the death of . . . Gosselin under circumstances manifesting an extreme indifference to the value of human life by shooting him in the back with a gun." Id. (quotation omitted). Following a jury trial, the defendant was acquitted of first degree murder. Id. at 485. However, the jury deadlocked on the second degree murder charge, and the trial court granted the defendant's subsequent motion for mistrial on that charge. Id.

### C. Second Indictments

On October 23, 2006, the grand jury returned an indictment on two alternative charges of second degree murder. Id. One charge was identical to the reckless second degree murder charge on which the first jury had deadlocked. Id. The other alleged knowing second degree murder. Id. The defendant subsequently moved to dismiss both second degree murder charges on the ground that, for double jeopardy purposes, they were the same as the first degree murder charge of which he had been acquitted. Id. The defendant also filed a motion in limine to exclude evidence of robbery from his trial on the second degree murder charges. Id. The trial court denied both motions, and the defendant filed an interlocutory appeal. Id. We upheld the trial court's decisions, holding that double jeopardy did not bar the defendant's retrial on

the second degree murder charges and that collateral estoppel did not bar the robbery evidence.  Id. at 486-89, 491-93.

### D.  Current Indictments

In December 2011, the State obtained the current indictments against the defendant, which all concern the day on which he shot and killed Gosselin.

The second degree murder charge is substantially the same as the prior second degree murder charges.  It alleges that the defendant "recklessly caused the death of . . . Gosselin under circumstances manifesting an extreme indifference to the value of human life by shooting . . . Gosselin in the back with a gun."  The attempted armed robbery charge alleges that the defendant "with a purpose that the crime of robbery be committed, purposely threatened another with physical force or put another in fear of immediate use of physical force while armed with a deadly weapon, to wit, a revolver, in the course of committing a theft, which, under the circumstances as [the defendant] believed them to be, constituted a substantial step toward the commission of the crime of robbery."  The unlawful possession charge alleges that the defendant "knowingly had in his possession or under his control a deadly weapon, to wit, a revolver."  The criminal threatening charge alleges that the defendant "purposely placed or attempted to place Chad Diaz in fear of imminent bodily injury by pointing a deadly weapon, to wit, a revolver, at Chad Diaz."

Before trial on the December 2011 charges, the defendant moved to dismiss the attempted armed robbery, unlawful possession, and criminal threatening charges on the ground that those charges were brought outside of the six-year limitations period, which expired on August 30, 2011.  See RSA 625:8, I (2007).  The trial court denied the motion, deciding that the statute of limitations period for all three charges was tolled pursuant to RSA 625:8, VI(b) (2007).

In a chambers conference on the fourth day of the jury trial, the court and the parties discussed potential jury instructions.  The State proposed that the court instruct the jury that it could "presume the reckless and extreme indifference required for the crime of second degree murder" if the jury found "that the Defendant used a deadly weapon while attempting to commit the crime of robbery."  The State's instruction was based upon RSA 630:1-b, I(b), which provides, in pertinent part, that the "recklessness and indifference" required to convict a defendant of reckless second degree murder "are presumed if the actor causes the death by the use of a deadly weapon in the commission of, or in an attempt to commit, or in immediate flight after committing or attempting to commit any class A felony."  The defendant argued that the presumption instruction violated his constitutional right against double jeopardy.  On the next day of trial, the court informed the parties that it would give the presumption instruction proposed by the State.

4

The jury convicted the defendant on all of the charges. At sentencing, the defendant argued that, because of the presumption instruction, it would violate his constitutional right against double jeopardy to receive separate sentences for the second degree murder and attempted armed robbery charges. The trial court disagreed, and sentenced the defendant to thirty years to life on the second degree murder charge, ten to twenty years on the attempted armed robbery charge (to run consecutively to the sentence for second degree murder), ten to twenty years on the criminal threatening charge (to run concurrently with the sentence for attempted armed robbery), and five to ten years on the unlawful possession charge (to run concurrently with the sentences for attempted armed robbery and criminal threatening).

## II. State v. Locke and Defendant's Non-Homicide Charges

While the instant appeal was pending, we decided Locke. In that case, we adopted a "same criminal episode" test for the purposes of a common law rule of compulsory joinder of criminal offenses. Locke, 166 N.H. at 345. Although we recognized that the adoption of a new rule of criminal procedure ordinarily should be accomplished through rulemaking, we held that "the common law of New Hampshire incorporates the principles set forth in Model Penal Code Section 1.07(2)." Id. at 349. Under Model Penal Code Section 1.07(2):

> Except as provided in Subsection (3) of this Section, a defendant shall not be subject to separate trials for multiple offenses based on the same conduct or arising from the same criminal episode, if such offenses are known to the appropriate prosecuting officer at the time of the commencement of the first trial and are within the jurisdiction of a single court.

Model Penal Code § 1.07(2) (1985). Model Penal Code Section 1.07(2) refers to Model Penal Code Section 1.07(3), which provides:

> Authority of Court to Order Separate Trials. When a defendant is charged with two or more offenses based on the same conduct or arising from the same criminal episode, the Court, on application of the prosecuting attorney or of the defendant, may order any such charge to be tried separately, if it is satisfied that justice so requires.

Model Penal Code § 1.07(3) (1985). We did not adopt Model Penal Code Section 1.07(3) because Superior Court Criminal Rule 97-A and District Division Rule 2.9-A already authorize the trial courts to sever charges and order separate trials when it is in the interests of justice to do so. Locke, 166 N.H. at 349.

We held that our common law rule of compulsory joinder "applie[d] to the defendant and to all similar cases pending on direct review," which means that it applies to the defendant in the instant appeal. Id. at 350. Thus, after we decided Locke, the defendant moved to add the compulsory joinder issue to his notice of appeal and allow for rebriefing and reargument. We allowed the defendant to add compulsory joinder as an issue and ordered supplemental briefing and reargument.

In its supplemental memorandum, the State agrees that the defendant's convictions of criminal threatening, falsifying physical evidence, and unlawful possession of a firearm must be vacated under Locke. The State concedes that those charges "either were based on the same conduct or arose from the same criminal episode as the second degree murder charge on which a mistrial had been declared in the defendant's initial trial." The State also concedes that it "could have brought those [non-homicide] charges prior to [the defendant's initial trial], and that [it] had no good reason for not joining [those] non [-]homicide charges at that earlier time." In light of the State's concessions, we vacate the defendant's convictions of criminal threatening, falsifying physical evidence, and unlawful possession of a firearm.

The State argues that we should not vacate the defendant's conviction of attempted armed robbery, however, because it had "good reason for not bringing [that] . . . charge prior to the defendant's first trial." The State does not dispute that the attempted armed robbery charge, like the other non-homicide charges, arises from the same conduct or the same criminal episode as the second degree murder charge. Rather, the State asks that we recognize a limited "good cause" exception to our common law rule of mandatory joinder. The State argues that "good cause" exists in this case "because a subsequent trial would have occurred regardless of any new charges brought." Here, the State observes, the defendant was going to be retried on the second degree murder charge after the jury in his first trial deadlocked on that charge. Thus, the State reasons, "weighty considerations of finality and associated interests recognized by this Court as a principal rationale for its rule of mandatory joinder . . . are inapplicable" to the attempted armed robbery charge "under the facts of this particular case."

In making these arguments, the State relies upon the standards for joinder adopted by the American Bar Association (ABA) Criminal Justice Standards. The State contends that because we did not adopt the language of Model Penal Code Section 1.07(2) in Locke, we are free to adopt the ABA standards instead. To the contrary, a close reading of our decision in Locke reveals that we did adopt the language of Model Penal Code Section 1.07(2) at least until the Advisory Committee on Rules and/or the legislature has had an opportunity to consider the mandatory joinder issue. See id. at 348-50. Thus, the State's argument on this point proceeds from a mistaken premise. Moreover, even if we were inclined to accept the State's invitation, we find its

6

proffer of "good cause" unpersuasive. Indeed, were we to accept the State's argument that the mere fact that there will be a retrial on some charges justifies it in bringing new charges that could have been, but were not, brought originally, this rationale would not be limited to the attempted armed robbery charge, but would extend to the defendant's convictions for criminal threatening, falsifying evidence, and unlawful possession of a firearm.

Having rejected the State's argument, and in light of the State's failure to dispute that the attempted armed robbery charge was based upon the same conduct or arose from the same criminal episode as the second degree murder charge, we also vacate the defendant's conviction of attempted armed robbery.

III.  Second Degree Murder Conviction

Only one of the defendant's appellate arguments remains. The defendant asserts that the issue of whether he attempted to rob Gosselin was necessarily litigated and decided in his favor in his first trial. He argues that the trial court violated the collateral estoppel doctrine as encompassed within the State and Federal Double Jeopardy Clauses when it instructed the jury that it could presume the requisite mens rea for second degree murder if it found that he was guilty of attempted armed robbery. See N.H. CONST. pt. I, art. 16; U.S. CONST. amends. V, XIV; RSA 630:1-b, I(b); see also Glenn, 160 N.H. at 491.

The issue of double jeopardy presents a question of constitutional law, which we review de novo. State v. Fischer, 165 N.H. 706, 715 (2013). We first address the defendant's double jeopardy claim under the State Constitution and rely upon federal law only to aid our analysis. See State v. Ball, 124 N.H. 226, 231–33 (1983).

"In the criminal context, collateral estoppel mandates that an issue of ultimate fact that has been fully tried and determined cannot again be litigated between the parties in a future prosecution." State v. Hutchins, 144 N.H. 669, 671 (2000). Thus, "if an essential element of [a] second prosecution was necessarily determined in the defendant's favor at the first trial," the second prosecution is barred. Id. (quotation omitted). "The burden is on the defendant to establish that such an issue was decided in his favor." Id. (quotation omitted).

When the jury returns a general verdict of acquittal, "it is difficult to determine how the fact finder in the first trial decided any particular issue." Id. (quotation and ellipsis omitted). Accordingly, we must "examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational finder of fact could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Id. (quotation and brackets omitted).

The defendant argues that the jury in his first trial, by acquitting him of first degree felony murder, necessarily found that he neither engaged in nor attempted to commit armed robbery. Thus, he contends that the issue of whether he committed or attempted to commit armed robbery could not be re-litigated in the instant case. The defendant acknowledges that we rejected a similar argument in his interlocutory appeal. Glenn, 160 N.H. at 487-89. There, we rejected his assertion that "by acquitting him of first-degree felony murder, [the jury] necessarily found that he did not shoot and kill the victim." Id. at 488. After reviewing the relevant material, we concluded that the jury "could have based its acquittal . . . on other grounds, such as [that] the defendant did not attempt to rob the victim at the time of the shooting." Id.

Although we used the phrase "such as," which indicates that what followed was only an example, the defendant construes our conclusion as a holding that the jury necessarily based its acquittal upon its finding that he did not commit or attempt to commit armed robbery. See Derosia v. Warden, N.H. State Prison, 149 N.H. 579, 580 (2003) ("The words 'such as' render the list . . . merely illustrative rather than exhaustive." (quotation omitted)). To the contrary, we held that the jury could have acquitted the defendant based upon its finding that the State failed to prove an element of the first degree felony murder charge. For instance, it could have acquitted the defendant because it found that he did not "knowingly cause the death of Leonard Gosselin." Glenn, 160 N.H. at 484 (quotation omitted). In another part of our opinion, we assumed, without deciding, that the jury based its acquittal upon its finding that the defendant did not commit or attempt to commit robbery. Id. at 492. The defendant contends that despite our language, we did, in fact, decide that the jury's acquittal was so based. We did not.

Based upon our review of the relevant material, including the first degree felony murder charge and the record from the defendant's first trial, we conclude that a rational finder of fact could have grounded its acquittal upon an issue other than the alleged attempted robbery. See Hutchins, 144 N.H. at 671. Accordingly, the collateral estoppel doctrine, as encompassed in the State Double Jeopardy Clause, did not bar the trial court's instruction. Because the Federal Constitution provides no greater protection than the State Constitution under these circumstances, we reach the same result under the Federal Constitution as we do under the State Constitution. See Glenn, 160 N.H. at 488-89. Therefore, we affirm the defendant's conviction of second degree murder.

> Affirmed in part; and
> vacated in part.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.